# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JEREMEO NATHANIEL MATTHEWS,      )
                                            )
       **Plaintiff,**                        )
                                            )     **Case No. 3:25-cv-00414**
**v.**                                             )     **Judge Frensley**
                                            )
**FRANK BISIGNANO, COMMISSIONER OF**    )
**SOCIAL SECURITY,**                       )
                                            )
       **Defendant.**                    )

## MEMORANDUM OPINION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Supplemental Security Income ("SSI") as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Plaintiff has filed an accompanying Memorandum. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16. Plaintiff submitted a further Reply Brief reasserting the arguments set forth in his earlier Memorandum and responding to arguments made by Defendant. Docket No. 17.

For the reasons stated below Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 13) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      INTRODUCTION

Rochelle Matthews protectively filed an application for SSI on behalf of her son, Plaintiff Jeromeo Nathaniel Matthews, on August 7, 2020 (Docket No. 12 ("TR"), p. 285-91), alleging that

Plaintiff had been disabled since July 20, 2020, due to acid [reflux], ADHD, allergies, asthma, and [intellectual] disability.[1] TR 88. Plaintiff later modified the onset date of his disability to March 13, 2004.[2] TR 88, 292. Plaintiff's application was denied both initially (TR 133, 164) and upon reconsideration (TR 185-87). Plaintiff subsequently requested (TR 196) and received (TR 48-75) a hearing. Plaintiff's hearing was conducted on December 1, 2023, by Administrative Law Judge ("ALJ") Kerry Morgan. TR 48. Plaintiff, Rochelle Matthews, and vocational expert ("VE"), Sharon Cornett, appeared and testified. *Id.*

On February 15, 2024 the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 17-46. Specifically, the ALJ made the following findings of fact:

1.    The claimant was born on February 11, 2003. Therefore, he was an adolescent on July 20, 2020, the date application was filed, which ended when the claimant attained age 18 on February 10, 2021 (20 CFR 416.926a(g)(2)).

2.    The claimant did not engage in SGA from July 20, 2020, the application date, through the 4th Quarter 2021. However, the claimant engaged in SGA starting the 1st Quarter 2022, and he had no consecutive twelve-month period during which he did not engage in SGA e [*sic*] (20 CFR 416.924(b) and 416.971 *et seq.*).

3.    From July 20, 2020, through the 4th Quarter 2021, the claimant had the following severe impairments: asthma; attention-deficit hyperactivity disorder (ADHD); and intellectual disability (20 CFR 416.924(c)).

---

[1] The record contains a discrepancy regarding Plaintiff's date of filing for SSI. The ALJ and the parties agree that Plaintiff's filing date was July 20, 2020 (TR 17; Docket No 14, p. 1; Docket No. 16, p. 2), and SSA disability determinations refer to the same date (TR 88, 134). However, Plaintiff's application summary identifies August 7, 2020 as his application date (TR 285-91). With there being no reason for the Court to believe that this discrepancy affects the matters at issue in the case, the Court will proceed using the dates agreed upon by the parties.

[2] However, the ALJ treats July 20, 2020 as Plaintiff's onset date (TR 17), and Plaintiff accepts the adoption of this date (Docket No. 14, p. 1). Therefore, the Court will proceed using the dates agreed upon by the parties.

4. From July 20, 2020, through the 4th Quarter 2021, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. Prior to attaining age 18, the claimant did not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. After careful consideration of the entire record, the undersigned finds that the claimant since attaining age 18 has had the residual functional capacity to work at all exertional levels except for occasional exposure to pulmonary irritants such as fumes, odors, gases, and poor ventilation; can understand, remember, and complete simple instructions; can maintain attention, concentration, and persistence for such tasks for a complete eight-hour workday and forty-hour workweek; should have no contact with the public, but can have occasional contact with coworkers and supervisor; and can tolerate occasional changes in jobs duties.

7. There is no past relevant work (20 CFR 416.965).

8. The claimant was born on February 11, 2003, and was 17 years old and a school age child as of the application filing date before attaining age eight and becoming a younger individual at that time (20 CFR 416.963).

9. The claimant has a high school education (20 CFR 416.964).

10. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR [ ] 416.969 and 416.969a).

12. The undersigned finds that the claimant has not been disabled, as defined in the Social Security Act, since July 20, 2020, the date the application was filed (20 CFR 416.924(a)).

TR 20, 24, 28, 35-36, 38-39.

On April 17, 2024, Plaintiff timely filed a request for review of the hearing decision. TR

280-82. On August 22, 2019, the Appeals Council issued a letter declining to review the case (TR

3

1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.     REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.     CONCLUSIONS OF LAW

### A.     Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F. 3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F. 3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F. 2d 139, 145 (6th Cir. 1980). In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings at the Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

(1)     If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)     If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)     If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[3]  If a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

(5)     The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.,* 20 CFR §§ 404.1520, 416.920; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2); *see also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's

_____

[3] The listing of Impairments is found at 20 CFR §404, Subpt. P, App. 1.

individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.      Plaintiff's Statement of Errors

Plaintiff contends that the ALJ's decision is not supported by substantial evidence, because the ALJ failed to adequately consider Listing 12.05, which refers to intellectual disorders. Docket No. 14, p. 5-12; Docket No. 17, p. 1-3. Plaintiff relies on a prior iteration of Listing 12.05 that preceded the Social Security Administration's revision of the Listings criteria. Docket No. 14, p. 5-12; *see* 81 FR 66138. However, in his Reply, Plaintiff reasserts his prior arguments and responds to Defendant's arguments without further reliance on the older criteria. Docket No. 17, p. 1-3.

Specifically, Plaintiff maintains that the ALJ "unreasonably dismissed" Listing 12.05, without "adequately discuss[ing]" that listing and "whether Plaintiff meets any of the subparts." Docket No. 17, p. 2. In Plaintiff's view, the ALJ's step three discussion "does not sufficiently reveal [the ALJ's] reasoning with respect to Listing 12.05 to allow the court to evaluate it for substantial evidence." *Id.* at 2. Plaintiff emphasizes the following portion of the ALJ's opinion:

> [T]he undersigned finds after carefully considering the longitudinal record that the claimant did not meet or medically equal any listed impairment during the relevant period. This finding pertains to any mental impairments either for children under Part B such as Listings 12.05 or 112.05 (for intellectual disorders) through 12.08 or 112.08 (for personality and impulse control disorders). Initially, with specific regard to the intellectual disorders, *there is insufficient medical evidence supporting either the claimant having significantly subaverage general intellectual functioning or significant deficits in adaptive functioning.*

TR 26 (emphasis added); *see* Docket No. 17, p. 2. Plaintiff objects that following this conclusion, "[t]he inquiry for Listing 12.05 ended there." *Id.* In Plaintiff's view, the opinion's treatment of 12.05 amounts to a "boilerplate finding" which is "insufficient to support a conclusion that Plaintiff's impairment does not meet or equal a listed impairment." *Id.*

The ALJ's discussion of 12.05 is especially inadequate, Plaintiff argues, in light of the evidence presented supporting significant subaverage general intellectual functioning. *Id.* Plaintiff points to three different intellectual functioning tests, two of which produced IQ scores below 70, reflecting subaverage general intellectual functioning. *Id.* at 2-3. Plaintiff contends that the ALJ's conclusion that Plaintiff lacked significantly subaverage general intellectual functioning is rendered "inaccurate" by the fact that "the record clearly reveals that Plaintiff does have significantly subaverage general intellectual functioning." *Id.* at 3. In light of the decision's reliance on this allegedly erroneous conclusion, Plaintiff asserts that "it is not discernable whether the ALJ properly considered Listing 12.05." *Id.*

Defendant argues that Plaintiff must satisfy three distinct elements in order to meet Listings 12.05B and 112.05B. Docket No. 16, p. 5. Defendant asserts that the ALJ found that Plaintiff did not have significant deficits in adaptive functioning manifested by one extreme or two marked limitations in the areas of mental functioning as required by 12.05B(2). *Id.* at 6. Therefore, Defendant contends, Plaintiff could not meet Listings 12.05B and 112.05B even if he had satisfied the requirement of significantly subaverage general intellectual functioning at issue here. *Id.* at 8. Defendant also argues that Plaintiff could not meet Listings 12.05A and 112.05A; these provisions require a cognitive inability to function at a level required to participate in standardized testing of intellectual functioning, and Plaintiff's ability to participate in IQ testing disqualifies him from this method of meeting the intellectual disability listings. *Id.* at 5.

Because Plaintiff was under the age of 18 at the time of application filing, but he since turned age 18, it is necessary to consider both Listing 12.05, and its equivalent Listing 112.05 which applies to claimants younger than 18 years old. Listings 12.05 and 112.05 may both be satisfied in two ways, subsection A or subsection B. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05, 112.05. Listings 12.05A and 112.05A require a claimant to satisfy three elements:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05A, 112.05A. Defendant correctly notes that Listings 12.05A and 112.05A are inapposite because Plaintiff's three IQ tests demonstrate his cognitive ability to function at a level required to participate in standardized testing of intellectual functioning.

Under Listings 12.05B and 112.05B, a claimant must satisfy the following three elements:

1. Significantly subaverage general intellectual functioning evidenced by a or b:
   a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
   b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
   a. Understand, remember, or apply information (see 12.00E1); or
   b. Interact with others (see 12.00E2); or
   c. Concentrate, persist, or maintain pace (see 12.00E3); or
   d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05B, 112.05B. With respect to IQ scores, it is "generally presume[d] that your obtained IQ score(s) is an accurate reflection of your general intellectual functioning, unless evidence in the record suggests otherwise," such as "a statement from the test administrator indicating that your obtained score is not an accurate reflection of your general intellectual functioning, prior or internally inconsistent IQ scores, or information about your daily functioning." 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00H. Further, it is proper to consider a conclusion that a test score is not an accurate reflection of general intellectual functioning only if it is (1) made by a "qualified specialist[], Federal and State agency medical and psychological consultant[], [or] other contracted medical and psychological expert[]" and (2) "well supported by appropriate clinical and laboratory diagnostic techniques and must be based on relevant evidence in the case record, such as . . . [c]linical observations made during the testing period, such as your ability to sustain attention, concentration, and effort; to relate appropriately to the examiner; and to perform tasks independently without prompts or reminders." *Id.*

Plaintiff highlights that the ALJ dismisses criteria 1 — significantly subaverage general intellectual functioning — without expressly analyzing whether Plaintiff's IQ scores satisfied the regulatory thresholds. Docket No. 17, p. 2-3. However, the ALJ's conclusion is preceded by a discussion of the medical and opinion evidence, including the results of Plaintiff's three IQ tests. TR 24-26. The ALJ discussed Plaintiff's 2010 test, which showed a full-scale IQ of 77, and Plaintiff's 2019 test, which showed a full-scale IQ of 49. TR 24, 26. With respect to Plaintiff's most recent test, administered in 2021 by Dr. Deborah Doineau, the ALJ noted the psychologist's conclusion that the resulting full-scale IQ of 65 was "thought to be an underestimate of his ability."

TR 25. In her evaluation, Dr. Doineau elaborates: "[Plaintiff's] effort and motivation were well below average. He was not particularly interested in the test. . . His attention and concentration waxed and waned." TR 1154.

The IQ evidence before the ALJ did not present a straightforward application of the threshold score of 70 established in Listing 12.05(B)(1)(a). The 2019 score fell well below the threshold, whereas the 2010 score substantially exceeded it. The 2021 score fell five points below the threshold, but the psychologist who administered the test thought it was an underestimate. TR 1154. The ALJ could have considered this opinion consistent with the regulations, as it was made by a qualified expert and supported by clinical observations made during the testing period regarding Plaintiff's effort. The ALJ could have reasonably accepted the 2021 score in conjunction with Dr. Doineau's opinion that it was an underestimate as adequate to support the conclusion that Plaintiff's full-scale IQ was above 70. The 2010 score would also support such a finding. The "substantial evidence" standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Her*, 203 F. 3d at 389, *citing Richardson*, 402 U.S. at 401. Here, the medical record provided substantial evidence from which the ALJ could conclude that "there is insufficient medical evidence supporting. . . the claimant having significantly subaverage general intellectual functioning." TR 26. Given the inconsistency of the scores, the evidence could also support a different conclusion. But because substantial evidence supports the conclusion reached, the decision of the ALJ will not be disturbed. *Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273.

Finally, Defendant correctly argues that the ALJ's finding that Plaintiff did not have significant deficits in adaptive functioning manifested by one extreme or two marked limitations in the areas of mental functioning as required by 12.05B(2) and 112.05(B)(2) precludes Plaintiff

11

from meeting Listings 12.05B and 112.05B even if he satisfied the significantly subaverage general intellectual functioning requirement under 12.05B(1) and 112.05(B)(1). The three requirements under 12.05B and 112.05B must each be satisfied to meet the intellectual disability listings, and Plaintiff does not challenge the ALJ's determination regarding significant deficits in adaptive functioning. Therefore, the ALJ's decision that Plaintiff does not meet Listings 12.05B and 112.05B must stand. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05B, 112.05B

## IV.     CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 13) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**